```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
                         Richmond Division
```

UNITED STATES OF AMERICA

v.                                         Criminal No. 3:15cr37

DEONTAE J. HARGRAVE

### MEMORANDUM OPINION

This matter is before the Court on the defendant's MOTION FOR COMPASSIONATE RELEASE PURSUANT TO § 603(b) OF THE FIRST STEP ACT (ECF No. 103), the United States' Response Opposing Defendant's Motion for Compassionate Release (ECF No. 105), and the REPLY TO UNITED STATES RESPONSE OPPOSING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (ECF No. 153). For the reasons set forth below, the defendant's MOTION FOR COMPASSIONATE RELEASE PURSUANT TO § 603(b) OF THE FIRST STEP ACT (ECF No. 103) will be denied.

### BACKGROUND

Deontae J. Hargrave was convicted on a plea of guilty to two counts of a three count Indictment. In particular, Hargrave pled guilty to Count One, robbery affecting commerce, in violation of 18 U.S.C. § 1951(a) and to Count Two, using, carrying, and possessing a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Hargrave was sentenced to a term of 237 months imprisonment consisting of 57 months of Count One and 180 months on Count Two, to be served consecutively to the

term on Count One. On appeal, Hargrave's convictions on Counts One and Two were affirmed as was the sentence on Count One. However, the sentence on Count Two was vacated and the case was remanded for resentencing on that count. (ECF No. 88) At the resentencing, Hargrave was sentenced to 180 months on Count Two to be served consecutively to Count One (SECOND AMENDED JUDGMENT IN A CRIMINAL CASE, ECF No. 123). Hargrave appealed but the United States Court of Appeals for the Fourth Circuit dismissed his appeal. (ECF No. 142)

According to the record, Hargrave robbed a 7-11 convenience store in Petersburg, Virginia. In so doing, he brandished a weapon, threatening the cashier and demanding funds from the cash register. When the cashier did not act with sufficient alacrity, Hargrave raised the firearm next to the cashier and fired the gun into a display case behind the cashier.

The offense level for the offenses of conviction was 17 and Hargrave's criminal history was a Category V. His convictions included a previous conviction for robbery and possessing a sawed-off shotgun during a robbery, for assault and battery, and for carrying a concealed weapon.[1] The guideline calculation for

---

[1] His juvenile convictions (which were not counted in calculating the criminal history) also included a number of crimes of violence, assault and battery, robbery, possessing a firearm during a robbery, committing bodily injury while a juvenile prisoner, and assaulting another prisoner.

incarceration for Count One was 46 to 57 months and was a mandatory minimum of ten years for Count Two.

As grounds for compassionate release, Hargrave asserts that he has "uncontrolled type 1 diabetes mellitus, astigmatism, myopia, cardiac murmur, hypertension, asthma, local infection of the skin and subcutaneous tissue, follicular cyst of the skin and subcutaneous tissue, high cholesterol, bronchitis, low white blood cells, major depression order, and recently-found glaucoma." Hargrave asserts that his physical and medical conditions have severely deteriorated while in prison. He also asserts that his efforts toward rehabilitation, consisting of enrolling into "multiple classes to help avoid recidivism" show both that he is rehabilitated and that he is not a danger to the community. As to the argument respecting factors of 18 U.S.C. § 3553(a), Hargrave takes the position that the time that he already has served in prison is sufficient to satisfy the purposes of sentencing.

## DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate

3

release under § 3582(c)(1)(A)(i). <u>United States v. White</u>, 378 F. Supp.3 784, 785 (W.D. Mo. 2019).

The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive professional efforts to curtail the virus' spread. <u>United States v. Raia</u>, 954 F.3d 594, 597 (3rd Cir. 2020). In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, <u>inter alia</u>, the guidance of the CDC, and non-binding policy statements of the United States Sentencing Guidelines. See <u>United States v. Beck</u>, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019). The policy statements are not binding but are informative and may be considered. <u>United States v. McCoy</u>, 981 F.3d 271, 276 (4th Cir. 2020). The cases teach that, to constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious. Also, it is generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." <u>United States v. Ayon-Nunez</u>, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).

To establish existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19, the

4

defendant must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at [his] prison facility." United States v. Feiling, 453 F. Supp.3d 832, 840 (E.D. Va. 2020); United States v. White, ____ F. Supp.3d ____, 2020 WL 1906845, at *1 (E.D. Va. April 23, 2020)

### 1. Particularized Susceptibility

The United States agrees that Hargrave suffers from type I diabetes, and the United States does not contest that Hargrave has met the particularized susceptibility component of the test.

### 2. Particularized Facility Risk

However, Hargrave has not met the particularized facility risk component of the appropriate test. Indeed, his motion does not even mention facility conditions. And, in his reply, Hargrave reports that he is now confined to USP Florence (population of 733), where two inmates and 33 staff members have tested positive for COVID-19. Two inmates have died there.[2]

On this record, Hargrave has not met the particularized facility component of the applicable test.

### 3. Assessment Under 18 U.S.C. § 3553(a)

But, even if Hargrave had met the particularized facility assessment (which he has not), it would be appropriate to deny

---

[2] When the United States filed its papers opposing Hargrave's motion, he was at USP Coleman (1,073 offenders). USP Coleman reported 5 inmates testing positive for COVID-19.

5

compassionate release in perspective of the sentencing factors prescribed by 18 U.S.C. § 3553(a). Compassionate release, of course, is appropriate only where the defendant is not a danger to the safety of any other person or of the community. Hargrave argues that he is not a danger to the community. That, he says, is largely because he "has come to the realization that further contacts with the criminal justice system will continue to result in protracted incarceration." (ECF No. 153, p. 2). "That realization, [says Hargrave] will provide the motivation for [him] to become a law abiding productive citizen." Id.

Unfortunately for Hargrave, the record does not permit a finding that he will not present a danger to individuals and to the community. To begin, he had a criminal history category of V that reflected a number of crimes of violence, including a previous robbery. And, of great concern is that Hargrave's conduct during incarceration reflects that he is a violent and dangerous person. For example, he has been punished in prison for possessing a dangerous weapon, being insolent to a staff member, exposing his genitalia to a female staff member, engaging in a sexual act, refusing to obey an order, and another count of possessing a dangerous weapon. It is not lost on the Court that shortly before filing the motion for compassionate release, Hargrave was found in possession of a homemade weapon in the form of shiv that measured

6

approximately seven inches in length, was one-eighth inch thick, and one inch wide at one end tapering to a sharp triangular point at the other end. (ECF No. 105, Exs. 1 through 3). That is a deadly weapon. Moreover, after he entered a plea of guilty in this case, and while he was awaiting sentencing, Hargrave sent a letter to a law enforcement officer that threatened the law enforcement officer, admitted to a murder, expressed pride in gang affiliation and his rank therein, and claimed to have a gang of killers answering to him. Taken as a whole, the record shows that Hargrave is a person inclined to violence and that he should remain in prison for the duration of the originally imposed (and subsequently amended sentence) in order to protect the public, to promote respect for the law and to deter Hargrave from further criminal conduct.

Lastly, Hargrave argues that he is enrolled in multiple classes to help avoid recidivism (to-wit, the Threshold Program) and that he has taken a number of educational classes such as Job Fair Information, Aids & Disease Prevention, Special Housing GED Science, Football/Sports Rules, Spanish Language Class, Soccer Officiating Class, Softball Officiating Class and Basketball Officiating Class. He has also completed a drug education class. Although Hargrave is to be commended for his efforts to better himself while in prison and to help him to avoid recidivism upon

7

release, his record as a whole while in prison teaches that his efforts at rehabilitation in prison have not produced significant results. In any event, the efforts at rehabilitation certainly do not in any way overcome his bent toward violence and law violation.

## CONCLUSION

For the foregoing reasons, the defendant's MOTION FOR COMPASSIONATE RELEASE PURSUANT TO § 603(b) OF THE FIRST STEP ACT (ECF No. 103) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 21, 2022